UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELGIN K. COX,<br><br>                    Plaintiff,<br><br>        vs.<br><br>ALLIN CORPORATION PLAN, UNUM<br>LIFE INSURANCE COMPANY OF<br>AMERICA,<br><br>                    Defendants. | Case No:  C 16-4675 SBA<br><br>Related to:<br>C 12-5880 SBA<br><br>**ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>JUDGMENT**<br><br>Dkt. 45, 46, 52, 54 |

This is an overlitigated action for judicial review under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.  In a prior action, Plaintiff Elgin Cox sued Unum Life Insurance Company of America ("Unum"), as the insurer and Plan Administrator for the Allin Corporation Plan ("Allin Plan"), to challenge the termination of his long-term disability ("LTD") benefits.  See Cox v. Allen Corp. Plan, et al., C 12-5880 SBA ("Cox I").  Although Unum initially paid benefits to Plaintiff for a period of twenty-four months, it ceased benefits under the Allin Plan's "Self-Reported Symptoms" limitation ("self-reported limitation").  Unum also refused to pay supplemental benefits under the Disability Plus Rider.

In Cox I, the Court adjudicated the parties' cross-motions for judgment and ruled that Unum had abused its discretion in rendering its decision.  The Court remanded the matter to Unum for further consideration of Plaintiff's claim.  Unum has since completed its review on remand and has again found that Plaintiff is not entitled to any further benefits under the self-reported limitation or the Disability Plus Rider.  Plaintiff commenced the

instant action against the Unum and the Allin Plan (collectively "Unum") to challenge that decision.

The parties are presently before the Court on Plaintiff and Unum's respective Motions for Judgment.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Unum's motion and DENIES Plaintiff's motion, for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I.   BACKGROUND[1]

## A.   OVERVIEW

In or around 2008, Plaintiff was employed as a web developer by Allin Consulting, a Pennsylvania based, wholly-owned subsidiary of Allin Corporation (collectively "Allin"). As part of his employment, Plaintiff was covered by the Allin Plan, which provided for both basic benefits and supplemental Disability Plus benefits in the event of disability, pursuant to an insurance policy issued by Unum ("Unum Policy").  As noted, the Plan is administered by Unum.

Participants in the Allin Plan are entitled to benefits when Unum determines that a participant is "disabled," as defined by the plan.  UA-POL-LTD 15.  Under the Allin Plan, Disability is defined as:

> You are disabled when Unum determines that:
>
> -   you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your sickness or injury; and
> -   you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for

---

[1] The facts of this case are set forth in extensive detail in the Court's ruling on the parties' motions for judgment in Cox I, and are repeated here only to the extent they are relevant to the instant motions.

which you are reasonably fitted by education, training or experience.

****

Id.

The Allin Plan limits the pay period for certain disabilities due to mental illness and "disabilities, due to sickness or injury, which are primarily based on self-reported symptoms" to 24 months.  UA-POL-LTD 21 ("Disabilities, due to sickness or injury, which are primarily based on **self-reported symptoms**, and disabilities due to **mental illness** have a limited pay period up to 24 months.").  The Allin Plan defines "self-reported" as follows:

> **SELF REPORTED SYMPTOMS** means the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to, headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

UA-POL-LTD 33.

The Allin Plan also includes a Disability Plus Rider, which provides as follows:

UA-POL-LTD 24-27.

> We will pay a monthly Disability Plus benefit to you when we receive proof that you are disabled under this rider and are receiving monthly payments under the LTD plan.  Disability Plus benefits will begin at the end of the elimination period shown in the LTD plan.

> You are disabled under this rider when Unum determines that due to sickness or injury,

> - you lose the ability to safely and completely perform 2 activities of daily living without another person's assistance or verbal cueing; or

> - you have a deterioration or loss in intellectual capacity and need another person's assistance or verbal cueing for your protection or for the protection of others.

UA-POL-LTD 24.  The term "**ACTIVITIES OF DAILY LIVING**" means:

> - Bathing - the ability to wash yourself either in the tub or shower or by sponge bath with or without equipment or adaptive devices.

> - Dressing - the ability to put on and take off all garments and medically necessary braces or artificial limbs usually worn.

- Toileting - the ability to get to and from and on and off the toilet, to maintain a reasonable level of personal hygiene, and to care for clothing.
- Transferring - the ability to move in and out of a chair or bed with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other support devices including mechanical or motorized devices.
- Continence - the ability to either:
    - voluntarily control bowel and bladder function; or
    - if incontinent, be able to maintain a reasonable level of personal hygiene.
- Eating - the ability to get nourishment into the body.

UA-POL-LTD 30.

In 2009, Dell Corporation acquired Allin and terminated coverage under the Unum Policy as of midnight January 8, 2009.  In its place, Dell provided a LTD benefits policy through Aetna Life Insurance Company ("Aetna"), pursuant to the terms of the Dell, Inc. Comprehensive Welfare Benefits Plan ("Dell Plan").

Plaintiff submitted a LTD disability claim under the Dell Plan, claiming a disability onset date of November 6, 2008.  Based on the disability onset date, Aetna denied the claim on the ground that the claim was governed by the Allin Plan.

On September 7, 2010, Plaintiff submitted a LTD benefits claim to Unum due to symptoms of vertigo[2], dizziness and cognitive dysfunction.  Unum initially paid benefits, but terminated them after twenty-four months under the Policy's self-reported limitation. Unum also declined to pay benefits under the Disability Plus Rider.  Plaintiff administratively appealed the decision, which Unum denied on March 23, 2012.

---

[2] One of the questions Unum posed to its evaluating medical expert on remand was to "explain the term 'vertigo' in medical context."  UA-CL-LTD 004143.  Dr. Crawford explained that vertigo is "not a specific diagnosis, it is symptom."  Id.  Vertigo is a type of dizziness where an individual senses movement in the environment "relative to the individual."  Id.  Although dizziness itself cannot be verified by an objective test, spontaneous dizziness may be simultaneously accompanied by acute nystagmus.  Id. However, it is possible for the individual to show nystagmus without being dizzy.  Id.

**B.    Cox I**

On November 12, 2012, Plaintiff filed a Complaint in this Court, seeking judicial review of the denial of his claim for benefits, pursuant to 29 U.S.C. § 1132(a)(1).  In addition to Unum and the Allin Plan, the Complaint named the Dell Plan and the Dell, Inc. Administration and Investment Committee (collectively "Dell Defendants"), as well as their plan insurer/administrator, Aetna.  Early in the action, the Court dismissed the claims against the Dell Defendants.  The remaining parties subsequently filed cross-motions for judgment.[3]  On September 14, 2014, the Court issued its Order granting Aetna's motion, denying Unum's motion and partially granting Plaintiff's motion.  Cox I, Dkt. 97.[4]

The Court reviewed Unum's decision under an abuse of discretion standard, and found that Unum abused its discretion in three ways.  First, Unum failed to properly analyze a decision by an Administrative Law Judge ("ALJ") at the Social Security Administration ("SSA"), finding Plaintiff disabled and granting his claim for disability benefits.  The Court found that "Unum should have, but failed to, set forth a meaningful analysis which compared and contrasted the ALJ's decision" with its own, as required by Montour v. Hartford Life & Accident Insurance Company, 588 F.3d 623, 635 (9th Cir. 2009).  Cox I, Dkt. 97 at 19.

Second, the Court found that while Unum was entitled to apply the self-reported limitation, it utilized the incorrect standard in determining the applicability of such limitation to Plaintiff.  Unum focused on whether Plaintiff's symptoms lacked objectively verifiable medical support, and hence, were entirely self-reported.  Instead, the Court

---

[3] Although the parties predicated their motions under Rule 52, the Court determined that Rule 56 was more appropriate because the Plan confers discretion upon the Plan Administrator to make benefit determinations.  See Harlick v. Blue Shield of Cal., 686 F.3d 699, 706 (9th Cir. 2012).  "In the ERISA context, 'a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'"  Id. (citation omitted).  For the same reasons, the Court determines that the instant cross-motions are governed by Rule 56.

[4] The Court's ruling is published as Cox v. Allin Corp. Plan, 70 F. Supp. 3d 1040 (N.D. Cal. 2014).

determined that application of the limitation depends on the method of diagnosing the sickness or injury that caused the disability, not whether the symptoms themselves are self-reported. Id., Dkt. 97 at 20 (citing Weitzenkamp v. Unum Life Ins. Co. of Am., 661 F.3d 323, 330 (7th Cir. 2011) ("[T]he self-reported symptoms limitation applies to disabling illnesses or injuries that are *diagnosed* primarily based on self-reported symptoms rather than to all illnesses or injuries for which the *disabling symptoms* are self-reported")).[5]

Finally, the Court found that Unum's refusal to pay supplemental Disability Plus benefits could not be upheld because Unum failed to address its reasons for the denial in its motion papers.

In terms of relief, the Court declined Plaintiff's request for the immediate reinstatement of benefits, and instead remanded the matter to the Plan Administrator to properly address the SSA's decision, to reevaluate application of the self-reported limitation and to address Plaintiff's claim for Disability Plus benefits. Cox I, Dkt. 97 at 23.[6] The Court stayed its remand order to facilitate a referral to Magistrate Judge Donna Ryu for a further settlement conference. Id.

After the Court issued its ruling, Plaintiff and Defendant each filed motions for leave to file a motion for reconsideration, which the Court denied. Id., Dkt. 101, 109, 122. The parties appeared before the Magistrate Judge for a further settlement conference on

---

[5] The Weitzenkamp court expressed concern that applying the self-reported limitation in any case where the disabling condition (e.g., pain, weakness) is entirely self-reported would effectively result in no benefits in most instances. 664 F.3d at 630. The court explained that "[f]or most illnesses or injuries, the disabling aspect is not the disease itself, but the pain, weakness, or fatigue caused by that illness or injury." Id. By way of example, the court noted that diseases such as stage IV cancer or advanced heart disease are disabling because of subjective symptoms. Id. As a result, focusing entirely on whether the condition is self-reported would "sweep within the limitation virtually all diseases…." Id. Thus, if an illness or injury resulting in the disabling condition is objectively verified, the limitation is inapplicable, even if the symptoms are entirely self-reported. Id.

[6] The Court cited Saffle v. Sierra Pacific Power Company Bargaining Unit Long Term Disability Income Plan, 85 F.3d 455, 461 (9th Cir. 1996), which stated: "[R]emand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination."

September 11, 2015, but the case did not settle.  Id., Dkt. 146.  On September 22, 2015, the Court issued an Order stating as follows: "[T]his action is remanded forthwith to the Plan Administrator for further consideration of Plaintiff's long-term disability benefits claim in a manner consistent with this Court's ruling, as set forth in its Order on Cross-Motions for Summary Judgment.  The Clerk shall close the file and terminate any pending matters." Id., Dkt. 150.  In conjunction with the order, the Court issued a Judgment "in favor of Plaintiff in part and in favor of Defendants Aetna Life Insurance Company, Dell, Inc. Comprehensive Welfare Benefits Plan, and Dell, Inc. Administration and Investment Committee Dell Corporation."  Id., Dkt. 150.

On October 15, 2015, Plaintiff filed motions to amend the judgment and for attorneys' fees.  Plaintiff sought to amend the judgment to specifically recite that: (1) judgment is entered partially in his favor against Unum; (2) all relief is denied as to Unum; and (3) Plaintiff is entitled to the immediate payment of twenty-four months of Disability Plus benefits (in the amount of $41,600.00, plus $24,959.95 in interest), which represents the time period during which Unum initially paid LTD benefits to him.  Id., Dkt. 174 at 5.  In addition, Plaintiff requested that the Court incorporate into the judgment numerous findings from the Court's September 30, 2014 Order.  Id.  On January 22, 2016, the Court issued its Order denying both of Plaintiff's motions.

## C.   UNUM'S CLAIM REVIEW ON REMAND

On remand, Unum provided Plaintiff's medical records, including records post-dating his administrative appeal, and this Court's summary judgment ruling in Cox I to Dr. Jacqueline Crawford, a board-certified neurologist.  In connection with the Court's remand order, she reviewed Plaintiff's medical records, the SSA's decision and the various medical tests cited therein—including those discussed in the Court's remand order.  Dr. Crawford found no objectively verifiable medical support for a finding that he suffered from any particular illness or injury, that he suffered from vertigo or other dysfunction, or was unable to perform ADLs.  In her view, the only restrictions and limitations provided by Plaintiff's

physicians were based on his self-reported symptoms of physical and mental impairments. UA 4138.

Unum also engaged Jana Zimmerman, Ph.D., who reviewed Plaintiff's medical records, including those from Drs. Scarborough and Bastien, from a behavioral health standpoint.  UA 4154-63.   Medical evidence did not support cognitive deficits.  UA 4154-63.  Nor did it support the conclusion that Plaintiff suffered from a deterioration or loss in intellectual capacity, or that he needed another person's assistance or verbal cueing for his protection or the protection of others.  UA 4156.  In reviewing the SSA's decision, Dr. Zimmerman faulted the analysis and conclusions of the ALJ for failing to consider whether his findings were medically supported.  In addition, Unum's vocational consultant reviewed the record and concluded that Plaintiff could perform his own occupation and alternative gainful occupation on either a full or part-time basis, taking into account his restrictions and limitations.  Id.

On March 8, 2016, Unum issued a 45-page letter of decision, which upheld its prior decision to terminate benefits.  UA 4220-265.  Unum found that Plaintiff's vertigo symptoms were based on his self reporting, and his cognitive complaints were not confirmed by valid testing. The testing relied upon by the ALJ did not actually provide objective data to support a neurological, medical or physical basis for Plaintiff's reported symptoms. Unum acknowledged the possibility that Plaintiff was experiencing the symptoms complained of, but determined that the existence of his symptoms and severity of impairment relied on his self-reporting.  While Plaintiff's reported cognitive symptoms were more consistent with a behavioral health etiology, that would also fall under the same policy limitation as the self-reported limitation, and maximum benefits had been paid. Further, Plaintiff was no longer disabled as defined by the Policy since he could perform both his regular occupation or a suitable alternative gainful occupation on a full-time or part-time basis.  Plaintiff also did not meet the definition of disability under the Disability Plus Rider.

**D.    THE INSTANT ACTION**

On August 16, 2016, Plaintiff filed the instant ERISA action against Unum and the Allin Plan, seeking judicial review of Unum's decision on remand.  With the agreement of the parties, the Court set a briefing schedule for the parties' cross-motions for judgment.  Unum has filed objections and motions to strike certain evidence that Plaintiff submitted in support of his Motion for Judgment and opposition to Unum's Motion for Judgment.[7]  The motions are fully briefed and are ripe for adjudication.

## II.    STANDARD OF REVIEW

**A.    ABUSE OF DISCRETION**

An individual who is denied benefits under his or her employer's ERISA-governed benefits plan may challenge such decision in federal court.  See 29 U.S.C. § 1132(a)(1)(B); Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008).  Where, as here, the benefits plan gives the plan administrator discretionary authority "as a matter of contractual agreement, then the standard of review is abuse of discretion rather than de novo." Demer v. IBM Corp. LTD Plan, 83 F.3d 893, 896 (9th Cir. 2016).   The test for abuse of discretion in a factual determination is whether "we are left with a definite and firm conviction that a mistake has been committed." Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011).  The Court may not merely substitute its judgment for that of the fact finder.  Id.  "Applying a deferential standard of review also does not mean that the plan administrator will always prevail on the merits. It means only that the plan administrator's interpretation 'will not be disturbed if reasonable.'" Conkright v. Frommert, 559 U.S. 506, 508 (2010) (quoting in part Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)).  The court "may review only the administrative record when considering whether the plan administrator abused its discretion." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006) (en banc).

---

[7] Plaintiff objects to the fact that Unum filed separate motions to strike.  Dkt. 52, 54. The Court finds that Unum's objections are properly presented and that Plaintiff has been afforded a fair and adequate opportunity to address those objections.

**B.     PLAINTIFF'S ARGUMENT FOR DE NOVO REVIEW**

In its ruling in <u>Cox I</u>, the Court found that, based on the Allin Plan's grant of discretionary authority, the abuse of discretion standard applied to Unum's benefits determination.  <u>Cox I</u>, Dkt. 97 at 13-14.  In an apparent attempt to collaterally attack that determination, Plaintiff now argues for the first time that, pursuant to California Insurance Code section 10110.6 ("§ 10110.6"), Unum's decision cannot be reviewed under an abuse of discretion standard.  Dkt. 46 at 6-7.[8]

California has enacted legislation to statutorily invalidate discretionary clauses such as the one utilized in the Plan.  Section 10110.6, effective January 1, 2012, provides, in relevant part:

> If a policy, contract, certificate, or agreement *offered, issued, delivered, or renewed*, whether or not in California, that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that *reserves discretionary authority to the insurer*, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is *void and unenforceable*.

Cal. Ins. Code § 10110.6 (emphasis added); <u>Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625</u>, 856 F.3d 686, 692 (9th Cir. 2017) (noting that Section 10110.6 "voids any 'provision that reserves discretionary authority to the insurer, or an agent of the insurer'").  The statute defines "renewed" as "continued in force on or after the policy's anniversary date."  Cal. Ins. Code § 10110.6.  The renewal of an insurance policy is significant because "[t]he law in effect at the time of renewal of a policy governs the policy...."  <u>Stephan v. Unum Life Ins. Co. of Am.</u>, 697 F.3d 917, 927 (9th Cir. 2012).

As an initial matter, Unum argues that Section 10110.6 does not apply because of the Unum Policy's choice of law provision indicates that the policy is governed by

---

[8] Unum argues that because Plaintiff failed to make any argument under § 10110.6 in <u>Cox I</u>, he has waived the right to do so in this action.  The Court need not reach the issue of waiver because it is clear that Plaintiff's argument fails on the merits.

Pennsylvania law.  By its own terms, however, § 10110.6 applies to an insurance policy or agreement that provides or funds disability insurance coverage "for any California resident."  Cal. Ins. Code § 10110.6(a).  In other words, the statute applies, regardless of *where* the policy was offered, issued, delivered, or renewed.  See Snyder v. Unum Life Ins. Co. of Am., No. CV 13-07522 BRO RZX, 2014 WL 7734715, at *10 (C.D. Cal. Oct. 28, 2014) (finding that § 10110.6 applied regardless of the policy's choice of law provisions).  Assuming arguendo that Plaintiff was a California resident when he filed his claim, § 10110.6 ostensibly could apply to him, notwithstanding the choice of law clause.[9]

The above notwithstanding, § 10110.6 does not apply to the Allin Plan because the statute's effective date post-dated the termination of the Unum Policy.  In his disability benefits claim, Plaintiff alleged a disability onset date of November 6, 2008.  The policy in effect at that time was the one issued to Allin by Unum.  However, as a result of Dell's acquisition of Allin, coverage under the Unum Policy terminated as of midnight January 8, 2009.  In its place, Dell provided a LTD benefits policy through Aetna to eligible employees, pursuant to the terms of the Dell Plan.  Since the Allin Policy had been terminated prior to—and had not been renewed as of—the effective date of § 10110.6, the statute is inapt to this case.

Plaintiff next argues that de novo review applies due to Unum's alleged failure to timely review Plaintiff's claim following this Court's remand order.  Dkt. 46 at 7.  This contention lacks merit.  As Plaintiff concedes, there is no specific statute, regulation or binding decisional authority setting a deadline within which an ERISA plan administrator must reach a decision following a court-ordered remand.  Nonetheless, Plaintiff argues that

---

[9] In Cox I, the Court concluded that by virtue of the choice of law clause in the Unum Policy, Pennsylvania law governs the policy.  The Court made that finding in the context of Plaintiff's contention that the California Insurance Commissioner had jurisdiction over the Unum Policy.  Here, Unum asserts, in the alternative, that the Court's prior choice of law ruling forecloses application of § 10110.6.  However, the issue now before the Court is different, in that it requires a conflict of laws analysis involving the choice of law clause and § 10110.6.  As neither side has presented that analysis, the Court does not reach the merits of Unum's alternative argument.

the Court should apply 29 C.F.R. § 2560.503-1(f)(3), which requires plan administrators to resolve claims within "45 days after receipt of a disability claim by the plan."  At least one district court has ruled that the aforementioned 45-day deadline applies to a remand. Robertson v. Standard Ins., 218 F. Supp. 1165, 1169 (D. Or. 2016) (adopting the Department of Labor's opinion that "a claim that has been remanded by a court generally should be treated as an appeal of a denied claim under the ERISA claims regulations").

Assuming without deciding that Unum is subject to a 45-day deadline to complete its remand, the Court finds that Unum's decision on remand is timely.  Plaintiff asserts that the 45-day period commenced on September 22, 2015, when the Court entered judgment in Cox I.  Dkt. 51 at 10.  The Court disagrees.  Shortly after that ruling, *Plaintiff* filed a motion to amend the judgment, which sought to alter the findings made by the Court in its summary judgment order, and by extension, the scope of the remand.  Id., Dkt. 154.  Given the pendency of Plaintiff's motion, it would be illogical to conclude that Unum's obligation to review Plaintiff's claim commenced on September 22, 2015.  Rather, the Court finds that Unum's obligation to begin its post-remand review was triggered on January 22, 2016, when the Court ruled on Plaintiff's motion to amend the judgment.  Unum rendered its decision on March 8, 2016, within 45 days of that date.

But even if Unum were tardy in completing its review on remand, such error does not mean that the standard of review is transmogrified from abuse of discretion to de novo. "ERISA procedural violations do not alter the standard of review unless the violations cause the beneficiary substantive harm."  Gorbacheva v. Abbott Labs. Extended Disability Plan, 309 F. Supp. 3d 756, 767 (N.D. Cal. 2018)) (quoting Dimery v. Reliance Standard Life Ins. Co., 597 Fed. Appx. 408, 409-410 (9th Cir. 2015)).  Here, Plaintiff has not identified any substantive harm resulting from Unum's purported delay in rendering its decision that would justify deviating from the abuse of discretion standard of review.  The Court's prior conclusion in Cox I that the standard of review is abuse of discretion therefore applies equally to this action.

III.   **DISCUSSION**

A.   **MOTION TO STRIKE AND OBJECTIONS TO EVIDENCE**

Unum moves to strike the following documents submitted by Plaintiff in support of his Motion for Judgment: (1) a declaration from V. Kent Cooper, M.D.; (2) a declaration of Sheila Bastien, Ph.D., and supporting exhibits; and (3) Exhibits 1 to 11 attached to the Declaration of Laurence Padway, consisting of excerpts from the Unum Benefit Center Claims Manual ("Claims Manual") and "published literature" cited in the declarations of Drs. Cooper and Bastien.  See Dkt. 46-1, 46-2 to 46-15, and 47.  Separately, Unum objects to and moves to strike the following extrinsic evidence submitted by Plaintiff in response to Unum's Motion for Judgment: (1) a copy of a letter from Unum, dated May 19, 2017, stating that Unum has "determined that [Plaintiff] remains disabled according to the terms of his Life Insurance policy" and therefore Unum will continue to waive his premium for life insurance coverage; and (2) an excerpt from the Federal Registrar.  See Padway Decl. Exs. 1, 2, Dkt. 53-2, 53-3.

The crux of Unum's objections is that the above-listed submissions (collectively "Disputed Evidence") constitute matters outside the administrative record which may not be considered when reviewing a plan administrator's decision regarding a claim for benefits.  Generally, a court "may review only the administrative record when considering whether the plan administrator abused its discretion."  Abatie, 458 F.3d at 970.  "In the ERISA context, the 'administrative record' consists of 'the papers the insurer had when it

denied the claim.'" Montour, 588 F.3d at 632 n.4 (quoting in part Kearney v. Standard Ins. Co., 175 F.3d 1084, 1086 (9th Cir. 1999) (en banc)).[10]

As a threshold matter, Plaintiff contends that the Disputed Evidence is proper on the ground that the remand order in Cox I did not "close" the record. However, nowhere in that Order did the Court mention, let alone make any finding, that Plaintiff could supplement the Administrative Record with additional information. Nor did the Court reopen Plaintiff's claim. Rather, consistent with Ninth Circuit authority, the Court remanded the matter to Unum to reevaluate Plaintiff's claim in accordance with the guidance provided by the Court. Cox I, Dkt. 97 at 23. The Court therefore finds no merit to Plaintiff's suggestion that the Court in Cox I required Unum to consider an expanded Administrative Record.

Plaintiff next contends that the declarations of Dr. Cooper and Bastien "are admissible under the rule that where a procedural irregularity prevents development of a complete record, the missing evidence, if proffered, must be admitted and considered by the Court." Dkt. 58 at 7. This Circuit has held that district courts may take additional evidence whenever "[procedural] irregularities have prevented full development of the administrative record." Saffon v. Wells Fargo Co. Long Term Disability Plan, 522 F.3d 863, 872 n.2 (9th Cir. 2008). According to Plaintiff, the "procedural irregularity" at issue is the failure of Unum's reviewing physicians to contact his treating physicians once they realized their

_____

[10] An exception to this general rule exists where the plan administrator has a structural conflict of interest. Abatie, 458 F.3d at 970. A structural conflict arises when "a plan administrator both evaluates claims for benefits and pays benefits claims," Metro. Life Ins. Co., 554 U.S. at 112, which is the case here. Where such a conflict exists, "[t]he district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest." Abatie, 458 F.3d at 970. Plaintiff did not assert the existence of a conflict in either his opposition to Unum's Motion to Strike nor his Motion for Judgment. Rather, Plaintiff inappropriately raised the issue for the first time in his opposition to Unum's Motion for Judgment. Since the briefing schedule agreed upon by the parties did not accommodate the filing of reply briefs, Unum has not had the opportunity to address this contention. Nevertheless, even if the Court were to consider the extra record evidence, none of it suggests that Unum's review and decision on remand were unreasonable, which is the overriding question presented.

opinions were not aligned.  Dkt. 58 at 7.  As will be discussed in more detail below, Unum

had no obligation on remand to engage in a continuing dialogue with Plaintiff or his

physicians to consider additional evidence.[11]  Tellingly, Plaintiff fails to cite any controlling

or pertinent decisional authority holding that Unum had any such legal obligation.  The

objection to the declarations of Drs. Cooper and Bastien is sustained.

With regard to the Claims Manual, Plaintiff argues that under 29 C.F.R. § 2560.503-

1(m)(8), the policies and procedures of a claims administrator are "relevant," and hence,

must be deemed to be part of the Administrative Record.  The excerpts are sections of the

Claims Manual at issue, entitled "California—Mental/Nervous and Self-Reported Symptom

Limitation" and "Medical Peer to Peer Contact."  Dkt. 46-6, 46-7.  Unum responds it did

not rely on these documents in making its claims determination and therefore they are not

relevant.  However, § 2560.503-1(m)(8)(iv) provides that:

> (8) A document, record, or other information shall be
> considered "relevant" to a claimant's claim if such document,
> record, or other information
>
> ****
>
> (iv) In the case of a group health plan or a plan providing
> disability benefits, constitutes *a statement of policy or guidance*
> with respect to the plan concerning the denied treatment option
> or benefit for the claimant's diagnosis, *without regard to*
> *whether such advice or statement was relied upon in making the*
> *benefit determination.*

(Emphasis added).  Unum does not dispute that the sections of the Claims Manual proffered

by Plaintiff constitute a statement of policy or guidance with respect to Unum's handling of

benefits requests.  Therefore, Unum's objection to the Claims Manual excerpts is overruled.

With regard to the Federal Register excerpt, Plaintiff asserts that the Court may

properly take judicial notice of it.  This excerpt discusses potential changes "to update and

revise the rules we use to evaluate hearing impairments and disturbance of labyrinthine-

---

[11] Though not obligated to do so, Unum considered post-remand information from
Plaintiff's health care providers.

1  vestibular function of adults and children who apply for, or receive, disability benefits

2  under title II and Supplemental Security Income (SSI) based on disability under title XVI of

3  the Social Security Act (SSA)." 70 Fed. Reg. 19353 (Apr. 13, 2005). Unum does not

4  dispute that the Court may take judicial notice of the excerpt under Federal Rule of Civil

5  Procedure 201, but contends that the proposed rule change has no bearing on whether

6  Plaintiff is entitled to LTD benefits. The Court agrees. The error in Unum's prior claims

7  analysis was its failure to adequately compare and contrast the findings of the SSA with its

8  own. The content of the cited portion of the Federal Register has no bearing on whether

9  Unum corrected this deficiency on remand. Unum's relevance objection is sustained. See

10  Fed. R. Evid. 402.

11  Likewise, the letter from Unum regarding the waiver of his life insurance policy

12  premium is irrelevant, extra record evidence. The letter specifically states that the

13  determination of disability was made "according to the terms of his Life Insurance policy."

14  Dkt. 53-1. Plaintiff does not dispute that the Unum Policy is not the Life Insurance Policy

15  referenced in the letter. In addition, Plaintiff has made no showing that the provisions for

16  assessing disability in the Life Insurance Policy are in any way related to Unum's

17  assessment of disability for purposes of LTD benefits. Unum's objection to the letter is

18  sustained.

19  The Court now turns to the merits of the arguments presented by the parties in their

20  respective motions and responses thereto.

21  **B.    APPLICABILITY OF THE SELF-REPORTED LIMITATION**

22  As a threshold matter, Plaintiff contends that Unum's Claims Manual precludes

23  Unum from applying the self-reported limitation to him. Dkt. 46 at 8-10. The section of

24  the Claims Manual at issue, i.e., California—Mental/Nervous and Self-Reported Symptom

25  Limitation, states that Unum "will not enforce a policy's self-reported limitation" in cases

26  where "a claim meets the criteria in the Applicability section…." Dkt. 46-6 at 2. The

27  Applicability section refers to:

28  California situed … LTD … claims filed between 10/3/05 and
12/31/07 that arise from policies renewed on or after 11/1/05;

and

All California sitused claims filed on or after 1/1/08 (see <u>Definition of Claims</u>).

<u>Id.</u> at 1.  The Definition of Claims section, in turn, states that "[e]ffective 10/3/05," California claims "are defined as those claims filed on or after 6/24/04, that arise out of [¶] Group … LTD … California sitused policies."  Connolly Decl. at 2-3, ¶¶ 6-7, Ex. 3, Dkt. 51-4.

The aforementioned provision in the claims manual correlates to the California Settlement Agreement ("CSA") reached on October 1, 2005, by Unum and the California Department of Insurance ("DOI").  <u>Cox I</u>, Dkt. 97 at 14.  The settlement resolved claims brought by the California Insurance Commissioner against Unum and related entities regarding their allegedly unfair claims handling practices.  <u>Id.</u>  Section IV of the CSA, which became effective November 1, 2005, requires Unum to cease utilizing the self-reported limitation provision in "California Contracts."  <u>Id.</u>  A California Contract is a policy of disability income insurance which is "subject to the jurisdiction of and approved by" the DOI.  <u>Id.</u> (citing CSA § II(B)).  In <u>Cox I</u>, Plaintiff argued that the CSA barred Unum from relying on the self-reported exception to his claim.  The Court rejected that contention, finding that Plaintiff had failed to demonstrate that the Unum Policy was subject to the DOI's jurisdiction, and thus the Unum Policy was not a California Contract subject to the CSA.  <u>Id.</u> at 15.

Plaintiff's new argument that Unum failed to follow its own claims manual is little more than an attempt to perform an end run around the Court's prior ruling regarding the inapplicability of the CSA.  When considered in the context of the CSA, the reference to "California sitused" claims means a claim made in a policy that qualifies as a California Contract—which the Unum Policy does not.

Notably, in 2012, the California Legislature codified the prohibition against application of the self-reported limitation and expanded it to protect "any California resident," regardless of where the policy was offered, issued, delivered, or renewed or

which state's law governs the policy.  Cal. Ins. Code § 10110.6(a).  But, as discussed, § 10110.6 does not apply to Plaintiff's claim because the Unum Policy was not in effect and had not been renewed as of the effective date of the statute.  The Court therefore concludes that the section of Unum's Claim Manual cited by Plaintiff does not foreclose Unum from applying the self-reported limitation to his claim.

### C.  ADEQUACY OF REVIEW ON REMAND

Plaintiff next argues that Unum's decision on remand is inadequate on the ground that Unum failed to comply with the Court's remand order.  He asserts that "Unum makes no effort in its decision [on remand] to address whether or not the methods used to diagnose Mr. Cox by his physicians were appropriate."  Dkt. 46 at 11.  However, that is not what Unum was ordered do to.  The error in Unum's prior application of the self-reported limitation was that it focused on whether there was any medical explanation for Plaintiff's disabling *symptoms*.  Rather, the salient question is whether Plaintiff's illness or injury is one that is *diagnosed* through self-reported symptoms (in which case the limitation would apply), or through objectively verifiable medical tests (in which the case the limitation would not apply).  Cox I, Dkt. 97 at 20; see also Dkt. 122 at 7.

The record supports Unum's contention that it complied with the Court's remand order by considering whether there was objective evidence to support Plaintiff's claimed disability.  On remand, Dr. Crawford, a neurologist, evaluated Plaintiff's medical records, including those generated post-remand, and concluded that there was no objective medical proof indicating that he suffered from any illness or injury that could cause his claimed symptoms, i.e., vertigo, dizziness, and cognitive deficits.  She also noted that there was no medical explanation for any of those symptoms, and that the medical records confirmed that Plaintiff's complaints were entirely self-reported.  In addition, Dr. Crawford reviewed each of the findings and tests discussed in the SSA and explained why she disagreed with the SSA's conclusions.  With regard to Plaintiff's alleged vocational and behavioral limitations, both Drs. Crawford and Zimmerman explained why the records did not support the conclusion that Plaintiff was unable to perform any ADLs.

Plaintiff offers little substantive response to Drs. Crawford and Zimmerman's opinions and conclusions.  He faults their reports for failing to determine whether Plaintiff's treating physicians used "appropriate methodology" to conclude that Plaintiff is disabled.  As discussed, however, the remand order did not center on the propriety of the methodology.  Instead, the Court directed Unum to consider the nature of the methodology employed to diagnose the sickness or injury that led to disability.  In this case, Unum examined the record and concluded that there was no objective medical evidence that Plaintiff, in fact, suffered from any specific medical illness or injury.  Although certain of Plaintiff's physicians opined that he was disabled, their opinions were predicated upon information self-reported by Plaintiff, as opposed to objectively verifiable medical criteria.

Plaintiff also complains that neither of the doctors considered the report of Unum's investigator, who observed Plaintiff staring at a fixed object during their interview and holding onto furniture as he moved around the house.  Dkt. 53 at 12.  He also asserts that they should have given more weight to the observations of Plaintiff's wife.  The Court did not order Unum on remand to consider the investigator or Plaintiff's wife's observations.  Moreover, a lay person's subjective observations of Plaintiff are not probative of whether there is objectively verifiable evidence of Plaintiff's condition, which was the focus of the remand.  The Court therefore rejects Plaintiff's contention that Unum failed to comply with the remand order.

### D.   FAIRNESS OF THE REMAND

Plaintiff generally attacks the fairness of the remand process.  More specifically, he claims that Unum's bias is shown by its refusal to (1) engage in a continuing "dialogue" with him and his doctors during the remand and (2) allow him to administratively appeal the adverse decision on remand.[12]  These contentions lack merit.

---

[12] Unum denies that it refused to communicate with Plaintiff and alleges that he was uncooperative in providing information and records during the remand.

Under ERISA, a claimant is entitled to a "full and fair review" of an adverse benefit determination.  29 U.S.C. § 1133(2).  The Department of Labor has promulgated regulations, principally 29 C.F.R. § 2560.503-1, governing such review.  See Aetna Health Inc. v. Davila, 542 U.S. 200, 220 (2004).  Among other things, these regulations require that, during the claim review stage, plan administrators engage in a "meaningful dialogue" with their beneficiaries regarding a claim.  Booton v. Lockheed Med. Ben. Plan, 110 F.3d 1461, 1463 (9th Cir. 1997) ("[W]hat [29 C.F.R. § 2560.503-1(g)] calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries....  [I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.").  Similarly, ERISA regulations require that every plan provide to claimants a "reasonable opportunity to appeal an adverse benefit determination," with a guarantee of "full and fair review of the claim."  29 C.F.R. § 2560.503-1(h)(1).

Though not entirely clear, Plaintiff appears to rely on § 2560.503-1 as support for his claim that Unum's remand process was defective.  The flaw in this argument is that it ignores the procedural posture of this action.  In connection with Unum's claims review process, Plaintiff had the opportunity to administratively appeal and present evidence challenging Unum's decision to terminate his benefits under the self-reported limitation. That appeal was all that was required under ERISA.  Blair v. Metro. Life Ins. Co., 955 F. Supp. 2d 1229, 1242 (N.D. Ala. 2013) (citing 29 C.F.R. § 2560.503-1(c)(2), (d), (h)(1)), aff'd, 569 F. App'x 827 (11th Cir. 2014).  In Cox I, the Court reviewed Unum's final decision and ruled that Unum abused its discretion "by failing to properly address the SSA's decision and applying the incorrect standard to assess the applicability of the self-reported limitation."  Dkt. 97 at 23.  In light of that finding, the Court concluded that a remand was the appropriate remedy.  Id. (citing Saffle, 85 F.3d at 461).

A remand is not intended to restart or reopen the claim review process.  Rather, the purpose of a remand is to allow the plan administrator to rectify the errors identified by the district court to ensure that the plaintiff's claim was fully and fairly considered by the plan Administrator.  See Chuck v. Hewlett Packard Co., 455 F.3d 1026, 1035 (9th Cir. 2006)

("[T]he usual remedy for a violation of § 1133 is 'to remand to the plan administrator so the claimant gets the benefit of a full and fair review.'") (citation omitted).  In view of the circumscribed scope of a remand in ERISA cases, federal courts addressing the issue have concluded that a plan administrator has no continuing legal obligation on remand to consider new evidence from the claimant.  See Blair, 955 F. Supp. 2d at 1255 (denying claimant's request for remand on the ground that the plan administrator had no continuing duty to consider additional evidence of disability *after* the plan administrator denied the plaintiff's administrative appeal), aff'd, 569 F. App'x 827 (11th Cir. 2014); Lee v. Hartford Life & Acc. Ins. Co., 928 F. Supp. 2d 51, 56-57 (D.D.C. 2013) ("But her right to a 'full and fair' review does not entitle her to supplement the record with new documents resulting in an essentially de novo review by this court based on a new record."); Pelletier v. Reliance Standard Life Ins. Co., 223 F. Supp. 2d 298, 307 (D. Me. 2002) ("Plaintiff can point to no authority, in either the plan itself or in ERISA, to require Reliance to consider new medical documentation after the denial of her appeal.").[13]  Nor do ERISA regulations require a plan administrator to grant a claimant *another* appeal after a decision on remand.  See Pettaway v. Teachers Ins. & Annuity Ass'n of Am., 644 F.3d 427, 436-37 (D.C. Cir. 2011) ("[ERISA] regulations provide for the 'opportunity to appeal an adverse benefit determination,' 29 C.F.R. § 2560.503-1(h)(1), and not for the opportunity to engage in a continuous cycle of appeals from appeals.").

The cases cited by Plaintiff are inapposite.  In Booton, the Ninth Circuit construed 29 C.F.R. § 2560.503-1(f) as requiring ERISA plan administrators and their beneficiaries to engage in a "meaningful dialogue" regarding a claim.  110 F.3d at 1463.  The court explained that if a claim is denied, the plan administrator must clearly state its reasons along with specific reference to the plan provisions that form the basis for the denial.  Id.

---

[13] Moreover, a finding that Unum was obligated to consider new evidence from Plaintiff on remand would contravene the general rule that judicial review of a plan administrator's decision generally is limited to "the record upon which the plan administrator relied in making its benefits decision."  Stephan v. Unum Life Ins. Co. of Am., 697 F.3d 917, 930 (9th Cir. 2012).

Likewise, if plan administrators believe that more information is needed to make a reasoned decision, they have an obligation to request it from the claimant. Id.  Those principles do not help Plaintiff, however.  The Court's remand was not predicated on a failure to engage in a meaningful dialogue but rather the Plan Administrator's failure to properly justify its decision in the context of the record presented.  Moreover, Plaintiff cites no authority holding that § 2560.503-1(f) applies to remands ordered by a district court.

Equally misplaced is Plaintiff's reliance on Gatti v. Reliance Standard Life Insurance Company, 415 F.3d 978, 985 (9th Cir. 2005), which he claims stands for the proposition that the record "does not close" when the plan administrator renders a decision on a claim.  Dkt. 58 at 6.  However, Gatti states the opposite proposition; namely, that "the district court may properly consider anything that was part of the administrative record before … the date that [the plan administrator] made its final decision." Id. (emphasis added) (citing Kearney, 175 F.3d at 1090).

In sum, the Court is unpersuaded by Plaintiff's contention that Unum failed to fairly conduct the remand process in a manner consistent with its legal obligations.  Viewing the record as a whole, the Court finds that the Plan Administrator's decision to uphold the termination of benefits was reasonable under the circumstances presented.  See Montour, 588 F.3d at 629-30 ("[T]he plan administrator's decision can be upheld if it is grounded on any reasonable basis").

### E.   DISABILITY PLUS BENEFITS

Plaintiff contends that he is entitled to Disability Plus benefits for the twenty-four month period during which he received disability benefits from Unum.  The Policy includes a Disability Plus rider, which provides benefits in the event of a "sickness or injury" if the claimant either (1) loses the ability to perform two ADLs without another person's assistance or verbal cuing or (2) suffers from a deterioration or loss in intellectual capacity and therefore requires another person's assistance or verbal cueing.  UA-POL-LTD  24.  Unum declined to pay Disability Plus benefits to Plaintiff, which he challenged in Cox I.

1  Because Unum failed to establish the reasons for its denial, the Court remanded the matter

2  to the Plan Administrator.[14]

3      On remand, Unum found that Plaintiff was not eligible for Disability Plus benefits as

4  defined by the Unum Policy.  UA-POL-24, 30; UA-4254-58.  Dr. Crawford considered the

5  record pertinent to his claim for Disability Plus benefits and concluded that there was no

6  objective medical evidence to support the conclusion that Plaintiff was unable to perform

7  any ADLs or suffered from the requisite loss of intellectual capacity.  UA-CL-LTD 4142.

8  In response, Plaintiff refers the Court to a statement by his wife submitted in Cox I, which

9  ostensibly corroborates the extent of his disability and its impact on his ability to manage

10  his life.  Dkt. 53 at 18-19.  As an initial matter, the Court need not consider arguments and

11  evidence presented in another action.  See Sandgathe v. Maass, 314 F.3d 371, 380 n.8 (9th

12  Cir. 2002).  That aside, Plaintiff presents no argument or decisional authority to support the

13  conclusion that Unum was obligated to credit subjective lay observations and award

14  Disability Plus benefits, notwithstanding the absence of supporting objective medical

15  evidence.  The Court finds that Unum did not abuse its discretion in declining to pay

16  Disability Plus benefits.

17  **IV.   CONCLUSION**

18      For the reasons stated above,

19      IT IS HEREBY ORDERED THAT:

20      1.    Plaintiff's motion for judgment is DENIED.

21      2.    Unum's motion for judgment is GRANTED.

22      3.    Unum's motion to strike is DENIED as to Claims Manual excerpts and

23  GRANTED in all other respects.

24

25      [14] Plaintiff asserts that in Cox I the Court ordered Unum to pay Disability Plus
    benefits.  As the Court made clear in numerous orders in the prior case, that statement is
26  inaccurate.  See Dkt. 174 at 6 n.2 ("[A]s the Court made clear in its rulings on the cross-
    motions for summary judgment and subsequent motions for reconsideration and attorneys'
27  fees, no final determination regarding Plaintiff's entitlement, if any, to Disability Plus
    benefits has been made. That issue is to be addressed on remand by the Plan
28  Administrator").

1         IT IS SO ORDERED.

2    Dated: 9/28/18

3                                            SAUNDRA BROWN ARMSTRONG
                                             Senior United States District Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28